1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Charlotte Eyvonne Wells,                No. CV-14-02048-PHX-JJT (BSB)

10                        Petitioner,        **ORDER AND REPORT AND**
                                             **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                        Respondents.

14   _____

15          Petitioner Charlotte Eyvonne Wells has filed a Petition for Writ of Habeas Corpus

16   pursuant to 28 U.S.C. § 2254, along with several exhibits.  (Docs. 1, 8, 9.)  Respondents

17   assert that the Petition should be dismissed as untimely under the Anti-Terrorism and

18   Effective Death Penalty Act (AEDPA), which provides the statute of limitations

19   applicable to state prisoners seeking federal habeas corpus relief.    (Doc. 15.)

20   Alternatively, Respondents argue that Petitioner's claims are procedurally defaulted and

21   barred from federal habeas corpus review, except for her Fourth Amendment claim and

22   her claim that trial counsel was ineffective during plea negotiations.    (*Id*. at 9.)

23   Specifically, Respondents argue that Petitioner's Fourth Amendment claim is not

24   amenable to federal habeas corpus review and that her claim that trial counsel was

25   ineffective during plea negotiations lacks merit.    Petitioner opposes Respondents'

26   assertions. (Doc. 18.)  For the reasons below, the Court recommends that the Petition be

27   denied.

28

1

2 **I.     Factual and Procedural Background**

3     **A.     Charges, Trial, and Sentencing**

4        In 2009, drug enforcement detectives stopped Petitioner's car after she made

5 several illegal lane changes.[1]  (Doc. 15, Ex. Y at 2.)  A drug-sniffing dog alerted to the

6 car's trunk, and the detectives found several bales of marijuana inside.  (*Id.* at 2.)  On

7 March 13, 2009, Petitioner was indicted in the Maricopa County Superior Court on the

8 following charges: (1) conspiracy to commit possession of marijuana for sale, a class two

9 felony (Count One); (2) sale or transportation of marijuana, a class two felony (Count

10 Two); and (3) possession of marijuana for sale, a class two felony (Count Three).

11 (Doc. 15, Ex. A at 1-2.)  Before trial, Petitioner moved to suppress the evidence gathered

12 at the traffic stop arguing that the stop and search of her vehicle were unlawful.  (Doc. 15,

13 Exs. B.)  After holding a hearing, the trial court denied the motion.  (Doc. 15, Exs. L, P,

14 Q.)  Following a trial, a jury found Petitioner guilty of all three counts.  (Doc. 15, Exs. C-

15 E, R-U.)  The State then moved to dismiss Count Three, and the trial court granted the

16 motion.  (Doc. 15, Ex. M at 5.)  On October 9, 2009, the trial court sentenced Petitioner

17 to 9.25 years' imprisonment on Count One and to a concurrent term of 9.25 years'

18 imprisonment on Count Two.  (Doc. 15, Exs. H, O.)

19     **B.     Direct Appeal**

20        Petitioner appealed to the Arizona Court of Appeals, arguing that the stop of her

21 vehicle was not based on reasonable suspicion and that the stop, search, and seizure

22 violated the Fourth Amendment.  (Doc. 15, Ex. W.)  On January 6, 2011, the appellate

23 court affirmed Petitioner's convictions and sentences.  (Doc. 15, Ex. Y.)  Petitioner did

24 not file a petition for review in the Arizona Supreme Court.

25

26 ───────────────

27     [1] These facts are derived from the Arizona Court of Appeals' decision.  (Doc. 15, Ex. Y.)  The appellate court's determination of the facts is presumed correct.  *See* 28

28 U.S.C. § 2254(e)(1).  Although Petitioner disagrees with this description of the facts, she has not rebutted the presumption of correctness with clear and convincing evidence.  *See Deere v. Cullen*, 718 F.3d 1124, 1144 (9th Cir. 2013).

1

2          **C.     Post-Conviction Proceedings**

3          On August 22, 2011, Petitioner filed a notice of post-conviction relief in the trial

4  court pursuant to Arizona Rule of Criminal Procedure 32.[2]  (Doc. 15, Exs. Z, YY.)  The

5  state trial court appointed Petitioner counsel.  (Doc. 15, Ex. AA.)  Petitioner later filed a

6  pro se petition for post-conviction relief, which the trial court declined to accept because

7  Petitioner was represented by counsel.  (Doc. 15, Exs. BB, CC.)  After reviewing the

8  record, Petitioner's appointed counsel concluded that the notice of post-conviction relief

9  was untimely and there was no "sufficient factual or legal basis upon which to ground a

10 good faith" post-conviction petition.   (Doc. 15, Ex. DD at 2.)   Counsel obtained

11 permission for Petitioner to file a pro se petition.  (*Id.*)

12         On April 12, 2013, Petitioner filed a pro se petition for post-conviction relief.[3]

13 (Doc. 15, Ex. EE.)  Petitioner raised the following claims:

14         (1)  trial counsel was ineffective for the following reasons: (a) failing "to review

15 [Petitioner's] case and speak to [her] about the many relevant issues in [her] case";

16 (b) failing to notify the State that Petitioner wanted to accept its plea offer;

17 (c) "obstructing the plea deal," despite being told "on multiple occasions that [Petitioner]

18 wanted to accept the original plea"; (d) being "unprepared for [Petitioner's] trial and

19 fail[ing] to interview the witnesses"; (e) refusing to allow Petitioner to testify on her own

20 behalf; (f) failing to attend "presentence meetings"; (g) refusing to allow Petitioner's

21 family to testify on her behalf at sentencing; (h) failing to present "mitigating issues"; and

22 (i) Petitioner "attempted to fire [counsel] but he refused to speak to the judge, and thereby

23 had a conflict of interest at [Petitioner's] sentencing" (Ground One);

24 _____

25         [2]  Consistent with Respondents' Answer and in accordance with *Houston v. Lack*, 487 U.S. 266, 270-74 (1988), the Court considers Petitioner's documents filed on the date

26 she gave them to prison authorities for mailing.  *Id.* (discussing the mailbox rule in federal proceedings).  Respondents have provided prison mailing logs containing the

27 dates on which Petitioner mailed her notice of post-conviction relief and her federal petition for writ of habeas corpus.  (Doc. 15, Exs. YY, ZZ.)

28         [3]  For ease of reference, the Court assigns numbers and lettered subparts to the claims Petitioner presented in her state court filings.

(2)  appellate counsel was ineffective for failing to notify Petitioner that her direct appeal had been denied until after the deadline to file a notice of post-conviction relief had passed (Ground Two);

(3)  the police officers did not have probable cause to stop Petitioner's car, "and then to search it with an untrained K-9 puppy and by [an] off-duty officer" (Ground Three);

(4)  the police violated *Miranda v. Arizona*, 384 U.S. 436 (1966), by continuing to interrogate Petitioner after she asked to speak to an attorney (Ground Four);

(5)  the State "altered evidence" because the "State's tape recording was edited" and "[t]he beginning of [Petitioner's] interview was deleted and not transcribed for the jury" (Ground Five); and,

(6) the State "provided perjured testimony from the officer[]s involved" because the officers' police reports differed from their trial testimony (Ground Six).  (Doc. 15, Ex. EE at 5-7.)

The State filed a response arguing that the Rule 32 proceeding was untimely.  (Doc. 15, Ex. FF.)   In her reply, Petitioner argued that the court should excuse the untimely filing because appellate counsel did not tell her when her direct appeal had concluded.   (Doc. 15, Ex. GG at 5-6.)   After considering additional briefing on the timeliness issue (Doc. 15, Exs. JJ, MM, NN), the trial court gave Petitioner "the benefit of the doubt" on that issue and stated that it would "address the issue of ineffective trial counsel on the merits."  (Doc. 15, Ex. OO at 3.)  The trial court scheduled an evidentiary hearing and re-appointed counsel to represent Petitioner.  (Doc. 15, Ex. OO at 3, Ex. PP.)  The court clarified that it would only consider Petitioner's ineffective assistance of trial counsel claims.  (Doc. 15, Ex. OO at 3.)  The trial court determined that all of Petitioner's other claims were "either precluded or without merit and [did] not set forth colorable claims."  (*Id.*)

The trial court held an evidentiary hearing on November 16 and 26, 2012. (Doc. 15, Exs. TT, UU.)  Petitioner and trial counsel Robert Billar testified at the hearing

and several exhibits were admitted.  (*Id.*)  After taking the matter under advisement, the trial court found that trial counsel acted reasonably and competently:

> The court heard testimony from [Petitioner] as well as trial counsel Robert Billar. . . . The parties are in agreement that Mr. Billar sent a copy of the plea . . . providing for 3.5 years in prison, to [Petitioner] at the jail and she called him and asked to have him explain the plea.  Mr. Billar visited [Petitioner] at her request and went over the plea with her.  This is undisputed.  The court accepts Mr. Billar's testimony that he went to the jail to visit [Petitioner] more than two times.

> What is disputed is that [Petitioner] testified she thought the plea provided for probation.  Mr. Billar advises that probation was not available (she acknowledged four prior felony convictions in the plea).  The plea clearly shows that [Petitioner] "shall be sentenced to the Arizona Department of Corrections for the presumptive term of 3.5 years."  [Petitioner] is incorrect in her view the plea permitted probation and no reasonable person could assume otherwise.  The court accepts Mr. Billar's testimony that he went over the plea and advised probation was not available but only DOC for 3.5 years.

> [Petitioner] contends that at [a hearing on June 10, 2009] she was supposed to enter into the offered plea and could not understand why she did not enter into a plea that day.  In response to Commissioner Newell's statement to the parties "You have had a chance to go over the plea agreement?" Mr. Billar answered "We are still working on it your Honor."

> Mr. Billar explained this at the instant hearing by noting [Petitioner] did not want to take the plea and since defendants often change their minds, he wanted to keep open the offer and not reject it.  Mr. Billar denies [Petitioner] wanted to take the offered plea that day or any day prior to the suppression hearing held [on August 21, 2009] where [Petitioner's] motion to suppress was denied on the issue of the validity of the stop.

> Mr. Billar testified that [Petitioner] always claimed she was innocent and would not plead because of that and that while she was driving the vehicle in which the marijuana was found, it really was her daughter's case who was riding in the vehicle with her.  She told police that she should have known marijuana was in the car and was to be paid for transporting it at the end of her trip and her daughter, a passenger, knew nothing about it.

> When [Petitioner] made known to Mr. Billar after the suppression hearing that she now wanted to take a plea even though it would be more harsh, he tried to get the plea reinstated or a new plea offered and the state refused to do so at that stage.  Trial was held a few days after the suppression hearing. The court accepts this testimony.

> No evidence was admitted concerning trial counsel's alleged inadequacy at the jury trial or his alleged unpreparedness.  These arguments the court considers abandoned by [Petitioner].

> The court in its review of the transcript of the suppression hearing and all the evidence adduced at the evidentiary hearing now determines that Mr. Billar at all times acted reasonably and competently in all respects. The court specifically denies [Petitioner's] contention that Mr. Billar tried

to stop her from being offered a plea at any time or stopped her from accepting a plea and that he told her to go to trial as he had a surprise for the state.

* * *

Mr. Billar followed the requirements set down in [relevant Supreme Court cases] and gave all information he had about the only one offered plea agreement. He did not fail to advise her of this plea and it was not accepted by [Petitioner] for her own reasons.

(Doc. 15, Ex. VV at 1-3.)

After briefly discussing Petitioner's sentencing, the trial court concluded that this "is a classic case of buyer's remorse in [Petitioner's] belated realization that she should have taken the one offered plea. The court denies all claims made by [Petitioner] and dismisses the instant petition." (*Id.* at 3.)

Petitioner filed a petition for review in the Arizona Court of Appeals. (Doc. 15, Ex. WW.) The petition raised the following claims: (1) trial counsel was ineffective for the following reasons (a) failing to honor Petitioner's instructions to accept a plea offer; (b) refusing to withdraw as counsel despite Petitioner's requests; and (c) telling Petitioner and her family that he "had a big surprise for the prosecutor" (Ground One); and, (2) "the case was base[d] on [Petitioner] having several traffic violation[s] in the State of A[ri]zona which was not true" (Ground Two). (*Id.* at 2, 4-6.)

On March 13, 2014, the Arizona Court of Appeals granted review but denied relief. (Doc. 15, Ex. XX at 2.) The appellate court rejected Petitioner's ineffective assistance of counsel claims, which she had also presented to the trial court during the evidentiary hearing, stating that the "credibility of witnesses at an evidentiary hearing in a post-conviction relief proceeding rests solely with the superior court." (*Id.* at 3.) The appellate court also affirmed the trial court's determination that Petitioner had abandoned her other claims by failing to present evidence to support those claims at the evidentiary hearing. (*Id.*) Petitioner did not file a motion for reconsideration or a petition for review in the Arizona Supreme Court. (Doc. 1 at 5, 6-8.) The appellate court issued the mandate on April 29, 2014. (Doc. 15, Ex. XX at 1.)

- 6 -

1          **D.      Federal Petition for Writ of Habeas Corpus**

2          Applying the mailbox rule (*see* Section I at n.2), Petitioner filed a petition for writ

3  of habeas corpus in this Court on September 5, 2014.[4]  (Doc. 1; Doc. 15, Ex. ZZ.)  The

4  Petition presents the following claims in three grounds for relief:

5          (1) trial counsel was ineffective in (a) failing to meet with Petitioner to discuss a

6  plea offer and failing to honor her instructions to accept the plea offer before it expired,

7  (b) promising Petitioner that she would receive no more than a five-year sentence,

8  (c) telling Petitioner that the State had extended another plea offer including a longer

9  term of imprisonment, when the State had not done so, (d) refusing to withdraw as

10 counsel despite Petitioner's requests, and (e) "not fight[ing]" for Petitioner and allowing

11 "the courts and prosecutor to use [her] historical priors when San Diego California

12 ask[ed] not to use[] them because they were 13 to 14 [years] old (sic)" (Ground One);

13         (2)  trial counsel was ineffective by (a) failing to honor Petitioner's instructions to

14 accept a plea offer, (b) refusing to permit Petitioner or her family to testify, (c) failing to

15 "address any question she wanted him to address all officers testifying at trial," (d) not

16 meeting with her until trial, (e) verbally abusing Petitioner, (f) failing to investigate

17 "some issues" with the Phoenix Police Department or the county sheriff's department,

18 and (g) failing to attend a "meeting with presentencing on [Petitioner's] behalf;" and

19 (h) appellate counsel was ineffective because she "never filed an answer to [Petitioner's]

20 appeal, so [she] lost the appeal and [her] right to file a Rule 32 on a timely bas[is]," and

21 (i) post-conviction counsel "tamper[ed] with court papers" (Ground Two); and,

22         (3) the traffic stop and the related search of Petitioner's vehicle violated the Fourth

23 Amendment (Ground Three). (Doc. 1 at 6-9.)

24         Respondents argue that the Petition is untimely.  (Doc. 15.)  They further argue

25 that Petitioner's claims are procedurally defaulted and barred from federal habeas corpus

26 review, except for her Fourth Amendment claim and her claim that trial counsel was

27 ───────────────────

28         [4]  For ease of reference, the Court assigns Petitioner's claims numbers and lettered
subparts.

ineffective during plea negotiations.   Respondents argue that Petitioner's Fourth Amendment claim is barred under *Stone v. Powell*, 428 U.S. 465, 486 (1976), and that her claim that trial counsel was ineffective during plea negotiations lacks merit. Petitioner has filed a reply in support of her Petition.  (Doc. 18.)  As set forth below, the Court recommends that the Petition be denied.

## II.   Statute of Limitations

The AEDPA provides a one-year statute of limitations for state prisoners to file a petition for writ of habeas corpus in federal court.   28 U.S.C. § 2244(d)(1).   The limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[5]

### A.   Commencement of the Limitations Period

After her conviction and sentencing, Petitioner sought direct review in the Arizona Court of Appeals.  The appellate court affirmed Petitioner's convictions and sentences on January 6, 2011.  (Doc. 15, Ex. Y.)  Petitioner then had thirty days in which to file a petition for review in the Arizona Supreme Court.  *See* Ariz. R. Crim. P. 31.19(a) (stating that "[w]ithin 30 days after the Court of Appeals issues its decision, any party may file a petition for review with the Clerk of the Supreme Court.").  In their Answer, Respondents added five days to the thirty-day deadline citing Rule 1.3, which provides that "whenever a party has the right or is required to take some action within a prescribed period after service of a notice or other paper and such service is allowed and made by mail, 5 days shall be added to the prescribed period."  (Doc. 15 at 11 (citing Ariz. R. Crim. P. 1.3); *see also State v. Zuniga,* 786 F.2d 956, 957 (1990) (Rule 1.3 extends the time to file a notice of appeal by five days when the order appealed has been mailed to the interested party).)

---

[5]  Under certain circumstances, the statute of limitations commences on a different date.   *See* 28 U.S.C. § 2244(d)(1)(A)-(D).   Petitioner does not make any allegations indicating that these sections should apply.   Thus, the statute of limitations commenced on the date Petitioner's judgment became final on direct review.   *See* 28 U.S.C. § 2244(d)(1)(A).

Respondents state that Petitioner had until February 10, 2011 to file a petition for review in the Arizona Supreme Court, but did not do so.  (Doc. 15 at 11.)

Thus, Petitioner's conviction became final on direct review on February 10, 2011, when the time for filing a petition for review of the Arizona Court of Appeals' decision to the Arizona Supreme Court expired.  *See* 28 U.S.C. § 2244(d)(1)(A); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007) (a petitioner's conviction was final on direct review upon the expiration of the time for seeking review of the court of appeals decision in the Arizona Supreme Court); *Gonzalez v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 656 (2012) (for a state prisoner who does not seek review in the State's highest court, the judgment becomes "final" under § 2244(d)(1)(A) on the date the time for seeking such review expires).

Accordingly, the one-year limitations period started to run the next day, February 11, 2011 and, absent tolling, expired one-year later, on February 10, 2012.  *See Patterson v. Stewart*, 251 F.3d 1243, 1245-47 (9th Cir. 2001) (the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)).  Because the Petition was filed after February 10, 2012, the Court considers whether statutory or equitable tolling applies to extend the deadline for Petitioner to file a petition for writ of habeas corpus in this Court.

### B.    Statutory Tolling

Pursuant to the AEDPA, the one-year limitations period is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *see Nino v. Galaza,* 183 F.3d 1003, 1006 (9th Cir. 1999) (stating that an application for collateral review is pending in State court for "all the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state remedies with regard to particular post-conviction proceedings.").

The limitations period started to run on February 11, 2011, and ran for 192 days until Petitioner filed a notice of post-conviction relief in the trial court on August 22,

2011.[6]  *See Isley v. Ariz. Dep't of Corrs.*, 383 F.3d 1054, 1055-56 (9th Cir. 2004) ("The language and structure of the Arizona post-conviction rules demonstrate that the proceedings begin with the filing of the Notice."); (Doc. 15, Exs. Z, YY.)  The limitations period was tolled while the post-conviction proceeding was "pending."  *See* 28 U.S.C. § 2244(d)(2).  On March 13, 2014, the Arizona Court of Appeals granted review, but denied relief.  (Doc. 15, Ex. XX at 2.)  Petitioner did not petition the Arizona Supreme Court for review and the court of appeals issued its mandate on April 29, 2014.  (Doc. 15, Ex. XX at 1.)

Respondents argue that the state post-conviction proceeding was no longer "pending," as defined in § 2244(d)(2), and thus the limitations period began to run again when the appellate court denied relief on March 13, 2014, and not when the appellate court issued its mandate on April 29, 2014.  (Doc. 15 at 12.)  Thus, Respondents argue that the statute of limitations ran for 176 days from March 13, 2014 (when the state appellate court denied relief) to September 5, 2014 (when Petitioner filed her habeas petition in this Court).[7]  Therefore, Respondents conclude that the pending habeas petition is untimely by four days under the one-year AEDPA limitations period (193 days + 176 days = 369 days).[8]  (*Id.* at 13.)

---

[6]  Respondents state that 193 days ran during this period.  (Doc. 15 at 12.) However, according to the Court's calculation, the period from and including February 11, 2011 (the day after Petitioner's conviction became final on direct review) to but not including August 22, 2011 (the date Petitioner is deemed to have filed her notice of post-conviction relief) is 192 days.  *See Patterson*, 251 F.3d at 1245-46 (the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)); *Isley*, 383 F.3d at 1055-1056 (one-year limitations period under AEDPA was tolled once petitioner filed notice of post-conviction relief that was required under Arizona law to commence such proceedings).

[7]  Respondents state that Petitioner filed her petition in this Court on August 22, 2014.  (Doc. 15 at 13.)  This appears to be a typographical error.  Respondents earlier stated that in accordance with the prison mailbox rule articulated in *Houston*, 487 U.S. at 270-74, they considered the Petition filed on the date that Petitioner gave it to prison officials for mailing, September 5, 2014. (Doc. 15 at 3 n.2; Doc. 15, Ex. Z.)

[8]  *See supra* note 6.  Respondents incorrectly calculate that the statute of limitations ran for 193 days from the date Petitioner's conviction became final to the date she filed her notice of post-conviction relief.  The statute ran for 192 days during this period.

Respondents rely on *Hemmerle*, 495 F.3d at 1074-76, and *Welch v. Carey*, 350 F.3d 1079, 1080-83 (9th Cir. 2003), to support their argument that Petitioner's post-conviction proceedings were final when the court of appeals denied relief, and not when the court issued its mandate.  (Doc. 15 at 12, citing *Hemmerle*, 495 F.3d at 1074-76; *Welch*, 350 F.3d at 1080-83.)   However, these cases do not support Respondents' argument.

In *Hemmerle*, the Ninth Circuit found that a state post-conviction proceeding was no longer pending for purposes of § 2244(d)(2) when the Arizona Supreme Court denied review "because there was nothing left for the court to do . . . ."  *Hemmerle*, 495 F.3d at 1077.  The court rejected the petitioner's argument that the post-conviction proceeding was pending until the clerk of the court of appeals issued a letter pursuant to Rule 32.9(h) returning the record.  *Id.* (citing Ariz. R. Crim. P. 32.9(h).)  The court noted that Rule 32.9(h) provides for a "[ministerial] function . . . [that] is not equivalent to the issuance of a mandate."  *Id.*

Here, unlike *Hemmerle*, Petitioner sought appellate review of the trial court's denial of post-conviction relief, the court of appeals granted review but denied relief, and Petitioner did not seek review in the Arizona Supreme Court.  Thus, this Court is not considering when a post-conviction proceeding is final after the Arizona Supreme Court denies review, as in *Hemmerle*, but instead must decide when a post-conviction proceeding is final after the Arizona Court of Appeals denies relief and the petitioner does not seek further review.  Therefore, *Hemmerle* does not resolve the issue before this court.[9]

Respondents' reliance on the Ninth Circuit's decision in *Welch* is also misplaced.  In *Welch*, the petitioner filed a post-conviction proceeding in California superior court, which was denied.  In the portion of the *Welch* opinion that Respondents quote (Doc. 15

---

[9] Notably, Respondents cite the portion of the *Hemmerle* decision discussing "gap tolling" for the period between the filing of post-conviction proceedings.  (Doc. 15 at 12 (quoting *Hemmerle*, 495 F.3d. at 1074-76).)  Respondents do not cite the portion of the decision discussing tolling under § 2244(d)(2).

at 12), the court stated that the petitioner "made no attempt to seek relief in a higher court." *Welch*, 350 F.3d at 1080. Instead, the petitioner waited four-and-one-half years and filed a second post-conviction proceeding, raising different issues, in the California Supreme Court. *Id.* The Ninth Circuit concluded that the petitioner's post-conviction proceedings were not pending after he abandoned his first petition and waited years to file a second petition raising different issues. Therefore, his post-conviction proceedings were not pending during the period between the two petitions and the AEDPA statute of limitations was not tolled during this period. *Id.* at 1082. The circumstances addressed in *Welch* have no bearing on the issue before this Court.[10]

---

[10]   Respondents also assert that "it is the decision of the state appellate court, rather than the ministerial act of entry of the mandate, that signals the conclusion of review." (Doc. 15 at 12 n.6 (quoting *White v. Klitzie*, 281 F.3d 920, 923 n.4 (9th Cir. 2002).) In *White*, the petitioner had filed a petition for writ of habeas corpus through Guam's territorial procedures, and the Guam Supreme Court denied the petition. The court rejected the argument that the petition was not final until the mandate was entered. *White*, 281 F.3d at 923 n.4. However, the court was applying the rules of the Guam Supreme Court to determine when a matter was final and found that Guam did not extend that time beyond the filing of the decision at issue. (*Id.*)

   In *White*, the court cited *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001), which is also inapposite because there the court considered the date on which a conviction becomes final under 28 U.S.C. § 2244(d)(1)(A), not the date on which state collateral review is no longer pending under § 2244(d)(2). In addition, the court found that under Washington law a mandate is not a decision terminating review. *Wixom*, 264 F.3d at 897-98 (citing Wash. R. App. P. 12.5(a)). Respondents also cite *Wetton v. Clarke*, 258 Fed. App'x 134 (9th Cir. 2007) (unpublished), to support their argument that the entry of the mandate does not determine when state court proceedings are final. (Doc. 15 at 12 n.6.) In *Wetton*, the court again applied Washington law to conclude that a mandate is not a decision terminating review. *Id.* at 135-36.

   Respondents' citation to *Holeman v. Ryan*, 2013 WL 3716603 (D. Ariz. Jul. 15, 2013), is similarly misplaced. In *Holeman*, the petitioner did not seek further review after the trial court denied his post-conviction relief proceedings. *Id.* at *4. The petitioner argued that his post-conviction relief proceedings should be deemed pending for tolling under § 2244(d)(2) until the time to seek appellate review expired. The court rejected this argument and concluded that the petitioner was not entitled to tolling for the time he could have but did not seek review of the trial court's denial of his post-conviction proceedings. *Id.* at *9. The court did not address the issue presented in this case. Furthermore, Respondents quote dicta from the *Holeman* decision in which the court misstated *Hemmerle* as concluding that under Arizona law the date of the issuance of the mandate is irrelevant to when a post-conviction petition is no longer pending. *Id.* at *5. As set forth above, *Hemmerle* distinguish the ministerial task of transferring a file from the issuance of a mandate. The court concluded that the former had no significant in determining when the matter was final, but did not address the effect of the mandate.

Here, after the trail court denied her petition for post-conviction relief, Petitioner sought review in the court of appeals, which granted review but denied relief.  Petitioner did not seek further review in the Arizona Supreme Court.  As Respondents recognize, courts in this district have considered these circumstances and concluded that post-conviction proceedings in Arizona are no longer "pending" under § 2244(d)(2), and thus no longer toll the AEDPA statute of limitations, when the court of appeals issues its mandate.  *See Celaya v. Stewart*, 691 F. Supp. 2d 1046, 1055 (D. Ariz. 2010), *aff'd* 497 Fed. App'x 744 (9th Cir. 2012) (under Arizona law, an appellate court decision is pending until the mandate issues); *Baker v. Ryan*, 2015 WL 997801, at *6 (D. Ariz. Mar. 6, 2015) ("In Arizona, when the court of appeals grants review of a petition, but denies the petition, direct review is not final until the mandate has issued.") *Washington v. Ryan*, 2015 WL 274151, at *4 (D. Ariz. Jan. 22, 2015) (same); *Elem v. Ryan*, 2013 WL 5434579, at *3-4 (D. Ariz. Sept. 27, 2013) (same).

In *Celaya,* just as in this case, the trial court denied the petition for post-conviction relief, the court of appeals granted review but denied relief, and the petitioner did not seek review in the Arizona Supreme Court.  *Ceyala,* 691 F. Supp. 2d at 1053.  The court distinguished *Hemmerle* and concluded that the Arizona Court of Appeals' decision denying relief was final, and thus the post-conviction proceeding was no longer pending for purposes of § 2244(d)(2), on the date the appellate court issued the mandate.  *Id.* at 1054-55.  In reaching this conclusion, the court relied on Arizona cases holding that "the appellate process is complete when the court of appeals issues its mandate."  *Id.* at 1054 (citing *Thompson v. Holder*, 965 P.2d 82, 84-85 (Ariz. App. 1998)); *see also id.* at 1074 (collecting Arizona cases).

Respondents agree that "[t]he tolling impact of a state court's mandate depends on state law."  (Doc. 15 at 12 n.6.); *Ceyala,* 691 F. Supp. 2d at 1053 ("For tolling purposes, however, state law determines finality.") (citing *Bunney v. Mitchell*, 249 F.3d 1188, 1189 (9th Cir. 2001)).  A petition for post-conviction relief is "pending as long as the ordinary state collateral review process is 'in continuance' — *i.e.*, 'until the completion of' that

process.  In other words, until the [petition] has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Carey v. Saffold,* 536 U.S. 214, 219-20 (2002).

Respondents argue, however, that in *Ceyala* the court was "mistaken" in its conclusion that the state post-conviction proceeding was pending until the court of appeals issued its mandate.  They argue that Rule 32 governs post-conviction proceedings and does not provide for the issuance of a mandate.  (Doc. 15 at 13 n.6.)  Therefore, they assert that "the date of the 'mandate' does not matter in post-conviction proceedings; after all, the rules do not even require a 'mandate' in the first place."  (*Id.*)

However, Rule 32.9(g) states that "[t]he provisions for filing motions for reconsideration and petitions for review in criminal appeals set forth in Rules 31.18 and 31.19 shall apply to and govern motions for reconsideration and petitions for review of an appellate court decision entered pursuant to Rule 32."  Ariz. R. Crim. P. 32.9(g).  Rule 31.23 in turn provides the procedures for the court of appeals to issue a mandate after the expiration of the time to file a motion to reconsider or a petition for review.  *Id.* at 31.23.  Although not explicitly incorporated in Rule 32(g), the Court finds that these provisions are part of the procedures that apply to motions for reconsideration and petitions for review and, thus, Rule 31.23 applies to post-conviction proceedings.

Additionally, Respondents' argument that Rule 31.23 does not apply in post-conviction proceedings is contrary to the practice of the Arizona Court of Appeals, which regularly issues a mandate at the conclusion of post-conviction proceedings.  *See Ceyala*, 691 F. Supp. 2d at 1053 (noting date Arizona Court of Appeals issued mandate in post-conviction proceeding); *Baker*, 2015 WL 997801, at *2 (same); *Washington*, 2015 WL 274151, at *4 (same); *Elem*, 2013 WL 5434579, at *2 (same).  In this case, the court of appeals issued a mandate pursuant to Rule 31.23.  (Doc. 15, Ex. XX at 1.)

Therefore, the Court concludes that when the Arizona Court of Appeals grants review of the trial court's decision on a petition for post-conviction relief but denies relief, and the petitioner does not seek further review, the post-conviction proceeding is

pending until the date the appellate court issues its mandate.  Accordingly, the limitations period was tolled on the date Petitioner filed a notice of post-conviction relief (August 22, 2011) and remained tolled until the date the appellate court issued its mandate concluding the state post-conviction proceeding (April 29, 2014).

Therefore, excluding the time the one-year limitations period was tolled, the Petition is timely.  As previously stated, the limitations period began running on February 11, 2011.  It ran for 192 days until Petitioner commenced her Rule 32 proceeding and was tolled while that proceeding was pending.  The limitations period started running again on April 29, 2014 and continued to run for 129 days until September 5, 2014, when Petitioner is deemed to have filed her petition for writ of habeas corpus in this Court.  (Doc. 15, Ex. ZZ; Doc. 1.)  Thus, the limitations period ran for a total of 321 days (192 days + 129 days = 321 days) between the date Petitioner's conviction became final on direct review and the date she filed her federal petition for writ of habeas corpus.  Because the Petition is timely, the Court does not need to consider whether equitable tolling applies.[11]

## III.  Exhaustion and Procedural Bar

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To

---

[11]  The AEDPA limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar.  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  However, the Court would find that equitable tolling does not apply.  A petitioner is entitled to equitable tolling only if she shows: "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Petitioner has not made either showing.

In her reply, Petitioner states that a prison paralegal directed her to "complete the package and mail it and [she] did as she was directed to do."  (Doc. 18-3 at 12.)  She speculates that her Petition may have been untimely filed because of a delay in the mail delivery.  (*Id.*)  The record reflects that Petitioner gave her Petition to prison officials for mailing on September 5, 2014.  (Doc. 15, Ex. ZZ.)  The Court considers the Petition filed as of that date.  *See Houston*, 487 U.S. at 270-74; *see also supra* at 2 n. 1.  Therefore, any delay in mailing after that date is irrelevant, and Petitioner has not shown any reason why she did not mail the Petition before September 5, 2014.

Furthermore, if the Petition were untimely, equitable tolling would not apply because Petitioner does not provide any other explanation for the timing of filing in this Court.  Petitioner has not articulated, and the record does not reveal, any extraordinary circumstance that prevented or delayed her in filing her federal habeas corpus petition.

exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.[12] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but

---

[12]   In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will

not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits.  *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

## IV.    Procedural Bar Applied to Petitioner's Claims

Petitioner asserts three grounds for relief in her pending habeas petition.  In Grounds One and Two, she asserts several claims of ineffective assistance of counsel. (Doc. 1 at 6-7.)  In Ground Three, she asserts that her arrest and the related search of her car violated the Fourth Amendment and, therefore, the trial court should have suppressed evidence obtained during the search.  (*Id.* at 8.)

Respondents agree that Petitioner properly exhausted her Fourth Amendment Claim asserted in Ground Three because she presented this claim to the state appellate court on direct review.  (Doc. 15 at 9, 19; Doc. 15, Exs. B, W.)  Accordingly, the Court considers this claim in Section V.A.  Respondents argue that except for her claims that trial counsel was ineffective during plea negotiations, Petitioner's claims of ineffective assistance of counsel, asserted in Grounds One and Two, are procedurally barred from federal habeas corpus review.  As discussed below, the Court concludes that habeas corpus review of most of Petitioner's claims is procedurally barred.

### A.    Claims of Ineffective Assistance of Counsel

In Grounds One and Two, Petitioner asserts several claims of ineffective assistance of trial counsel.  (Doc. 1 at 6-7.)  She also argues that appellate and post-conviction counsel were ineffective.  (*Id.* at 7.)  Petitioner must exhaust the factual basis of each claim of ineffective assistance of counsel.  *See Kelly v. Small*, 315 F.3d 1063,

1068 n.2 (9th Cir. 2003) (requiring exhaustion in state court of the factual basis of each distinct ineffective-assistance claim), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007); *Gulbrandson v. Ryan*, ___ F.3d ___, 2013 WL 5779188, at *12 (9th Cir. Oct. 28, 2013) ("As a general matter, each 'unrelated alleged instance [] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion.") (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)).

Petitioner presented a variety of claims of ineffective assistance of trial counsel in her petition for post-conviction relief in the trial court.  (Doc. 15, Ex.  EE at 1-2, 5-7.) She also raised several claims of ineffective assistance of trial counsel to the Arizona Court of Appeals in her petition for review.  (Doc. Ex. WW at 2, 4-6.)  However, on review of the denial of post-conviction relief, the appellate court found that the petition for review presented only a claim that trial counsel was ineffective during plea negotiations for failing to inform the State that Petitioner wanted to accept a plea offer and for failing to advise her that the plea offer included probation.  (Doc. 15, Ex. XX.) The appellate court also found that the petition for review included additional claims, but Petitioner had abandoned those claims by failing to develop a factual basis for those claims during the evidentiary hearing before the trial court.  (Doc. 15, Ex. XX at 3.)

Thus, other than Petitioner's claims that trial counsel was ineffective during plea negotiations, Petitioner either did not present her claims of ineffective assistance of counsel to the Arizona Court of Appeals on post-conviction review, or she presented those claims to the appellate court, but that court found review barred pursuant to a state procedural rule.   Therefore, as discussed below, federal habeas corpus review of Petitioner's defaulted claims of ineffective assistance of counsel is barred.

First, to the extent that Petitioner presented her claims of ineffective assistance of counsel (other than her plea-negotiation claims) to the appellate court, federal habeas corpus review of those claims is barred because the appellate court denied review based on an independent and adequate state grounds.  *See State v. Doody*, 930 P.2d 440, 450–51

(Ariz. Ct. App. 1996) (rejecting claim as waived because defendant failed to develop its factual basis in the trial court).

Second, to the extent that Petitioner did not present her claims to the Arizona Court of Appeals on post-conviction review, habeas corpus review is barred because it would be futile for Petitioner to return to the state courts to try to exhaust her claims because a successive petition for post-conviction relief would be untimely, and these claims would be precluded from Rule 32 review because they could have been raised in Petitioner's prior post-conviction proceeding.  *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also State v. Bennett*, 146 P.3d 63, 67 (Ariz. 2006) ("As a general rule, when [claims] are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims [] will be deemed waived and precluded.") (internal quotation omitted).   Additionally, Petitioner's defaulted claims do not implicate any of the exceptions to the timeliness or preclusion rules referred to in Rule 32.4(a) and Rule 32.2(b), including being held in custody after the imposed sentence expired, the presentation of newly discovered material facts that probably would have changed the verdict or sentence, the failure to file a timely notice of post-conviction relief or a notice of appeal that was not the defendant's fault, a change in the law, or the petitioner's actual innocence.  *See* Rule 32.1(d), (e), (f), (g) and (h).

Accordingly, with the exception of the Petitioner's claim that trial counsel was ineffective during plea negotiations and her Fourth Amendment claim, federal habeas corpus review of Petitioner's claims is procedurally barred.  As discussed in Section III.B, Petitioner has not established a basis to overcome the procedural bar to review of these claims.

### B.      Petitioner has not Established a Basis to Overcome the Procedural Bar

Because Petitioner's claims are procedurally defaulted, other than her Fourth Amendment claim and her claim that trial counsel was ineffective during plea negotiations, federal habeas corpus review is unavailable unless Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice" to overcome the

procedural bar.  *See Coleman*, 501 U.S. at 749.  For the reasons below, the Court finds that Petitioner has not established a basis to overcome the procedural bar.

### 1.   Fundamental Miscarriage of Justice

A federal court may review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A "fundamental miscarriage of justice" occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup*, 513 U.S. at 324.  The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.

Petitioner does not argue that failure to consider her defaulted claims will result in a fundamental miscarriage of justice.  (Docs. 1, 8, 9, 18.)  Rather, Petitioner argues that she should have been allowed to plead guilty.  (Doc. 1 at 6, 11.)  Considering Petitioner's assertion that she wanted to plead guilty, any claim of a fundamental miscarriage of justice would be unconvincing.  *See McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997) (a petitioner's claim of a fundamental miscarriage of justice was "unpersuasive" "in light of his guilty plea").  Moreover, Petitioner has not presented new evidence and has not shown that failure to consider her procedurally defaulted claims will result in a fundamental miscarriage of justice.  Thus, she has not met *Schlup's* high standard and this exception does not excuse the procedural bar.

### 2.   Cause and Prejudice

A federal court may review the merits of a procedurally defaulted claim if a petitioner establishes "cause" and "prejudice."  *Coleman*, 501 U.S. at 750.  To establish

"cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298. A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

"Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Petitioner does not identify any "objective factor external to the defense," that impeded her ability to present her defaulted claims to the state courts. (Docs. 1, 8, 9, 18); *see Coleman*, 501 U.S. at 753. Petitioner's status as an inmate, lack of legal knowledge, and limited legal resources do not establish cause to excuse the procedural bar to review of her claims. *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon jailhouse lawyers did not constitute cause). Because Petitioner has not shown cause for the procedural default of her claims, the Court does not consider whether Petitioner can show prejudice. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Because Petitioner has not shown a basis to overcome the procedural bar to review of her defaulted claims, Petitioner is not entitled to habeas corpus relief on those claims.

/ / /

1    **V.     Petitioner's Claims that are Properly before the Court**

2         **A.     Fourth Amendment Claim**

3         In Ground Three, Petitioner argues that stop and search of her vehicle violated the

4    Fourth Amendment and that the trial court erred in failing to suppress evidence obtained

5    during the search.  (Doc. 1 at 8.)  Respondents argue that Petitioner's Fourth Amendment

6    claim was fully litigated in state court and therefore is not subject to federal habeas

7    corpus review.  (Doc. 15 at 15-17.)  In her reply, Petitioner discusses the merits of her

8    Fourth Amendment claim, but does not specifically dispute Respondents' argument.

9    (Doc. 18.)

10        "If the state has provided a state prisoner an opportunity for full and fair litigation

11   of his Fourth Amendment claim, [a federal court] cannot grant federal habeas relief on

12   the Fourth Amendment issue."  *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir.

13   2005) (citing *Stone v. Powell*, 428 U.S. 465, 494, (1976)); *see Newman v. Wengler*, 2015

14   WL 3700161, at *1, *3 (9th Cir. Jun. 16, 2015) (holding that the doctrine of *Stone v.*

15   *Powell*, survives the passage of the AEPDA).  In determining whether a state prisoner

16   had a full and fair opportunity to litigate her Fourth Amendment claim, a court examines

17   the extent to which the claim was considered by the state trial and appellate courts.  *See*

18   *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981) (finding that a lengthy evidentiary

19   hearing transcript, a four-page appellate opinion, and substantial briefs demonstrated

20   careful consideration of appellant's Fourth Amendment claim).

21        The record of the state proceedings show that Petitioner received a full and fair

22   opportunity to litigate her Fourth Amendment claim.   Petitioner raised a Fourth

23   Amendment claim in a pre-trial motion to suppress, and the trial court held an evidentiary

24   hearing on the issue.  (Doc. 15, Exs. B, L.)  At the hearing, Petitioner was given an

25   opportunity to present evidence and cross-examine the arresting officer.  (Doc. 15,

26   Exs. L, Q at 11-29.)  After the hearing, the trial court determined that Petitioner's Fourth

27   Amendment rights had not been violated and denied the motion to suppress. (Doc. 15,

28   Ex. Q at 30.)  Petitioner challenged the trial court's ruling on direct appeal.  (Doc. 15,

Ex. W.)  The court of appeals rejected Petitioner's argument and affirmed the trial court. (Doc. 15, Ex. Y.)

Therefore, the record reflects that Petitioner raised her Fourth Amendment claim to the state trial and appellate courts, fully briefed that claim, and had an evidentiary hearing.   Thus, Petitioner had a full and fair opportunity to litigate her Fourth Amendment claim and, therefore, this Court cannot consider Petitioner's Fourth Amendment claim.  *See Reed v. Farley*, 512 U.S. 339, 347 (1994) (quoting *Stone*, 428 U.S. at 469) (federal courts cannot "consider a claim that evidence from an unconstitutional search was introduced at state prisoner's trial if the prisoner had 'an opportunity for full and fair litigation of the claim in the state courts.'")).  Accordingly, the Court recommends that the court deny Petitioner's request for habeas corpus relief based on her Fourth Amendment claim.

**B.      Ineffective Assistance of Trial Counsel during Plea Negotiations**

In Grounds One and Two, Petitioner argues that trial counsel was ineffective during plea negotiations.  As set forth below, Petitioner is not entitled to relief on this claim because she has not shown that the state court's resolution of this claim was based on an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of controlling Supreme Court precedent.  *See* 28 U.S.C. § 2254(d).

**1.      Review of Claims Adjudicated on the Merits in State Court**

If a habeas petition includes a claim that was "adjudicated on the merits in State court proceedings," federal court review of that claim is limited by § 2254(d).  Under § 2254(d)(1), a federal court cannot grant habeas corpus relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, __ U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" based on the record before the state

court.  28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).  This standard is "difficult to meet."  *Richter*, 562 U.S. at 102.  It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

When evaluating state court decisions on habeas review, federal courts look through summary or unexplained higher state court opinions to the last reasoned decision on the claim.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  Here, the trial court issued a detailed written decision (Doc. 15, Ex. VV), and the Arizona Court of Appeals deferred to and largely adopted that decision.  (Doc. Ex. XX at 3 ("The determination of the credibility of witnesses at an evidentiary hearing in a post-conviction relief proceeding rests solely with the superior court.")).  Consequently, the last reasoned decision is the decision of the trial court.   However, the Court defers to both the trial court's decision and the appellate court's decision.  *See Amado v. Gonzalez*, 758 F.3d 1119, 1130 (9th Cir. 2014) ("When the last reasoned decision is a state appellate court decision which adopts or substantially incorporates lower state court decisions, we may review those lower state court decisions as part of our review of the state appellate court's decision.") (internal quotation marks and modifications omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision.  *Greene*, 132 S. Ct. at 44.  A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a

particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination." *Id.*

Federal courts may also grant habeas corpus relief when the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014); *see Pollard v. Galaza*, 290 F.3d 1030, 1033, 1035 (9th Cir. 2002) (the statutory presumption of correctness applies to findings by both trial courts and appellate courts). Additionally, state court's findings of fact are presumed to be correct. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with "clear and convincing evidence." *Id.*

When a state court decision is deemed to be contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). "Actual prejudice" means that the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 631.

Here, because the pending Petition alleges ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), the *Strickland* prejudice standard applies

and the court does not engage in a separate analysis applying the *Brecht* standard.  *See Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v. Calderon*, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000) (stating that the court "need not conduct harmless error review of *Strickland* violations under *Brecht* . . . because '[t]he; *Strickland* prejudice analysis is complete in itself; there is no place for additional harmless-error review.")).

### 2.  Standards to Establish Ineffective Assistance of Counsel

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington,* 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner.  *Id.* at 687.  To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id.* at 690.   When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  *Id.*  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.   Review of counsel's performance is extremely limited.  Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel.  *Id.*

To establish a Sixth Amendment violation, a petitioner must also establish that she suffered prejudice as a result of counsel's deficient performance.  *Id*. at 691-92.  To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing on one.   *See id.* at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to

satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at 688).

The negotiation of a plea bargain is "'a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.'" *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1406 (2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).  If counsel has misadvised a defendant about the law during a plea negotiation, or improperly coerced a defendant to accept a plea bargain, counsel's performance may be found deficient.  *See Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012) (counsel's erroneous legal advice about possibility of conviction that led to rejection of plea offer constituted deficient performance).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 1387.

When a petitioner has pleaded guilty, to satisfy *Strickland's* prejudice prong he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (citations omitted).  To show that prejudice resulted from the ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a petitioner] must demonstrate a reasonable probability" that (1) he "would have accepted the earlier plea offer," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 132 S. Ct. at 1409.  The Court considers Petitioner's claims of ineffective assistance of trial counsel in light of these standards.

### 3.    The State Court's Determination of Petitioner's Claims

Petitioner asserts that trial counsel Billar was ineffective during plea negotiations because he failed to meet with her to discuss a plea offer and failed to accept a plea offer before it expired.  (Doc. 1 at 6, 7 (*see* Grounds One (a), Two (a).)  The trial court rejected

1    these claims on post-conviction review, and the appellate court affirmed.   (Doc. 15,

2    Exs. VV, XX.)

3          Although a claim of ineffective assistance of counsel is a mixed question of law

4    and fact, *Lankford v. Arave*, 468 F.3d 578, 583 (9th Cir. 2006), the resolution of

5    Petitioner's claim that Billar was ineffective during plea negotiations turns on factual

6    issues that the trial court resolved against Petitioner.  (*See* Doc. 15, Ex. VV at 1-3.)  As

7    discussed below, Petitioner has not presented clear and convincing evidence to rebut the

8    presumption of correctness that applies to the court's factual findings.   *See* 28

9    U.S.C. § 2254(e)(2).

10         During post-conviction proceedings, the trial court held an evidentiary hearing to

11   consider Petitioner's claims of ineffective assistance of trial counsel.[13]  (Doc. 15, Exs.

12   TT, UU.)  As discussed in more detail below, after observing Billar and Petitioner testify,

13   the trial court found that the parties agreed on some issues and otherwise credited Billar's

14   testimony.  (Doc. 15, Ex. VV); *see Edwards v. Lamarque*, 475 F.3d 1121, 1126-27 (9th

15   Cir. 2007) (concluding that the trial court, which observed counsel during trial, did not

16   make an unreasonable determination of the facts and deferring to the trial court's

---

17         [13]  Pursuant to Rule 5(c) of the Rules Governing Section 2254 Cases, on May 15,
18   2015, the Court directed Respondents to file transcripts of the Rule 32 evidentiary
     hearing.  (Doc. 19.)  Rule 5(c) provides that the district court "may order that the
19   respondent furnish other parts of existing transcripts or that parts of untranscribed
     recordings be transcribed and furnished."  On June 12, 2015, Respondents requested an
20   extension of time to file those transcripts because the evidentiary hearing was not
     transcribed and they were having difficulty obtaining the transcripts.   (Doc. 21.)
21   Respondents also argued that because the evidentiary hearing was not transcribed,
     transcripts of the hearing were not part of the state record at the time the appellate court
22   affirmed that trial court's decision and, therefore, the transcripts of evidentiary hearing
     are new evidence that are not properly considered on habeas corpus review.  (*Id.* at 3-4.)
23   To support their argument, Respondents cite *Cullen v. Pinholster*, __U.S. __, 131 S. Ct.
     1388, 1398 (2011), in which the Supreme Court held that a petitioner cannot "overcome
24   an adverse state-court decision with new evidence introduced in a federal habeas court,
     but not presented to the state court.  *Id.* at 1399.  Accordingly, Respondents argue that the
25   transcripts are not necessary to resolve Petitioner's claims.

26         The Court need not resolve whether the transcripts are new evidence under
     *Pinholster.*  Rather, because the Rule 32 evidentiary hearing was not transcribed during
27   post-conviction review and Respondents have encountered difficulty obtaining those
     transcripts, the Court withdraws it May 15, 2015 Order and denies Respondents' motion
28   for extension of time as moot.  The Court notes that Petitioner did not request the
     transcripts.

rejection of trial counsel's assertion of inadequate performance).  On habeas corpus review, this Court may not "re-determine credibility of witnesses whose demeanor has been observed by the state trial court." *Aiken v. Blodgett*, 921 F.2d 214, 217 (9th Cir. 1990) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

On post-conviction review, the state court found that the parties agreed that Billar sent Petitioner, at the jail, a copy of a plea agreement that included a sentence of 3.5 years' imprisonment, Petitioner called and asked Billar to explain the plea agreement, and Billar met with Petitioner to discuss the plea agreement.  (Doc. 15, Ex. VV at 1-3.)  The trial court also noted that Billar testified that he met with Plaintiff at the jail two more times.  (*Id.*)  The trial court concluded that these facts were undisputed.  (*Id.*)  On appeal, the court affirmed the trial court's findings.  (Doc. 15, Ex. XX.)

In her Petition, Petitioner argues that Billar did not meet with her before trial and did not meet with her to discuss a plea offer.  (Doc. 1 at 6, 7.)  However, in her Reply, Petitioner states that Billar sent her a copy of a plea agreement, she called and requested that Billar meet with her to explain the plea agreement, and that Billar met with her on June 1, 2009.  (Doc. 18-2 at 15.)  To support her Petition, Petitioner filed a log from the jail which lists the dates that Billar visited Petitioner.  (Doc. 8-1 at 3, 5, 6, 8, 9, 10, 12; Doc. 18-2 at 31, 33, 35.)  These logs reflect that Billar met with Petitioner several times, including on June 1, 2009.  (Doc. 8-1 at 3, 5, 6, 8, 9, 10, 12; Doc. 18-2 at 31, 33, 35.)  Therefore, Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness that applies to the state court's determination of the facts regarding whether Billar met with Petitioner to discuss the plea offer.  *See* 28 U.S.C. § 2254(e)(1) (providing that a state court's determination of a factual issue is "presumed to be correct" and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence.").

In her Petition, Petitioner argues that trial counsel was ineffective during plea negotiations because he failed to inform the State that she wanted to accept a plea offer.[14] (Doc. 1 at 6-7.)   Petitioner made this same argument on post-conviction review. Specifically, Petitioner asserted that during a June 10, 2009 hearing in her criminal case, she was supposed to accept a plea offer and enter a guilty plea, and that she did not understand why she did not enter a guilty plea during that hearing.  (Doc. VV at 1-3.)

The post-conviction court heard testimony regarding this issue during the evidentiary hearing.  The court noted that evidence was presented that during the June 10, 2009 hearing Commissioner Newell stated, "You have had a chance to go over the plea agreement?"  (*Id.*)  Billar answered, "We are still working on it your Honor."  (*Id.*)  Billar testified before the post-conviction court that Petitioner did not want to accept the plea offer.  (*Id.*)  He also testified that defendants often change their minds and, therefore, he wanted to keep the plea offer open, rather than reject it.  (*Id.*)  Billar denied Petitioner's assertion that she wanted to accept the plea offer.  (*Id.*)  Billar testified that Petitioner claimed she was innocent and would not plead guilty because, although "she was driving the vehicle in which the marijuana was found, it really was her daughter's case" who was a passenger in the vehicle.  (*Id.*)  The trial court credited Billar's testimony.  (*Id.*)

---

[14]  In her Reply, Petitioner asserts that the plea offer included probation.  (Doc. 18-2 at 13.)  It appears that Petitioner makes this assertion to support her claim that she wanted to accept the plea offer.  On post-conviction review, Petitioner also argued that the plea offer included probation, but the trial court concluded that the plea offer did not include probation.  (Doc. 15, Ex. VV.)

The record supports the trial court's conclusion.  The first paragraph of plea offer described the range of sentences generally available for the charge to which Petitioner would plead guilty under that offer.  (Doc. 18-2 at 25.)  It stated that the presumptive sentence was 3.5 years, the minimum was 2.5 years, and the maximum sentence was 7.0 years (8.75 if the court found exceptional circumstances).  (*Id.*)  The paragraph generally stated that probation was available.  (*Id.*)

However, the second paragraph of the plea offer included the proposed stipulated sentence.  (*Id.*)  It specifically stated that "[t]he Defendant shall be sentenced to the Arizona Department of Corrections for the presumptive term of 3.5 years.  The Defendant shall be ordered to pay . . . a total fine of $1,380."  (*Id.*)  Thus, as the state court found, the sentence to which the parties stipulated to in the plea agreement did not include probation.  (*Id.*)

1    Assuming that Petitioner testified and disputed Billar's testimony during the
2    evidentiary hearing, "[w]here there are two permissible views of the evidence, a fact
3    finder's choice between them cannot be clearly erroneous." *Cooper v. Brown*, 510 F.3d
4    870, 919 (9th Cir. 2007) (citing *Amadeo v. Zant*, 486 U.S. 214, 226 (1988)).   Petitioner
5    has not presented clear and convincing evidence to rebut that presumption of correctness
6    that applies to the state court's factual findings.   *See*  28  U.S.C. § 2254(e)(2).
7    Additionally, the Court must defer to the state court's credibility determinations.  *See*
8    *Aiken*, 921 F.2d at 217.

9    Petitioner also argues in her pending habeas petition that she did not want to go to
10   trial.  (Doc. 1 at 7.)   She claims that she wanted to enter a guilty plea, and that Billar did
11   not accept a plea offer despite her instructions that he do so.[15]   (Doc. 18-2 at 15.)
12   Petitioner asserts that Billar did not testify truthfully during the Rule 32 evidentiary
13   hearing.  (Doc. 9-1 at 47.)   Petitioner contends that she discussed the plea offer with
14   Billar, and that they agreed that she would accept the plea offer.   (Doc. 18-2 at 15.)
15   Petitioner claims that she does not know why Billar told the trial court on June 10, 2009
16   that they were still working on the plea.  (*Id*.)  She also claims that Billar told her that he
17   only goes to trial.  (*Id.* at 17.)

18   Petitioner, however, has not presented clear and convincing evidence to support
19   her allegations and to overcome the presumption of correctness that applies to the state
20   court's factual determinations of this issue.  *See* 28 U.S.C. 2254(e)(2).  To support her
21   claim that Billar's credibility is questionable, Petitioner relies on several unsigned letters
22   that were purportedly written by an inmate Billar represented.  (Doc. 8-1 at 46, 53.)  One
23   of the letters, dated October 12, 2009, states that the author was present when Billar
24   failed to show up for meetings with Petitioner.  (Doc. 80-1 at 46.)  However, that letter
25   does not include the dates of those alleged missed meeting or any other details.  (*Id.*)
26   Another letter, dated October 18, 2009, states that several days after Petitioner's criminal

27
28   [15] Petitioner asserts that the plea offer was for a sentence from three to five years'
     imprisonment.  (Doc. 15-5 at 23 (Grounds One (a) and (b)).)  The parties do not dispute
     the terms of the plea agreement.

trial concluded, Billar asked the author of the letter if Petitioner was mad at him. (Doc. 8-1 at 53.)

It is not clear whether these letters were presented to the state court on post-conviction review.  These letters, even if presented to the post-conviction court, shed little light on Billar's representation of Petitioner during plea negotiations, and do not constitute clear and convincing evidence to rebut the presumption of correctness that applies to the trial court's factual findings regarding Billar's conduct during the plea negotiations.  *See* 28 U.S.C. § 2254(e)(2).

Petitioner also argues that trial counsel was ineffective during plea negotiations because he told her that the State had extended a second plea offer for a longer term of imprisonment, but there was no such plea offer.  (Doc. 1 at 7 (Ground Two (d).)  In her Reply, Petitioner argues that she asked Billar to obtain a new plea offer, but she never had the opportunity to accept a new offer.  (Doc. 18-2 at 17.)

On post-conviction review, the court noted that Billar testified that after the trial court denied the motion to suppress, Petitioner indicated that she was interested in accepting a plea offer, even though it would harsher than the 3.5 year offer. (Doc. 15, Ex. VV at 2.)  Billar testified that he tried to get the State to reinstate the plea offer for 3.5 years' imprisonment or to extend another offer.  However, the State refused to reinstate the prior offer or to extend a new plea offer.  (*Id.*)  The trial court accepted this testimony.  (Doc. 15, Ex. VV at 1-3.)  Petitioner has not presented "clear and convincing evidence" to rebut the presumption of correctness that applies to the state court's determination of the facts regarding Billar's attempt to secure a second plea offer from the State.  *See* 28 U.S.C. § 2254(e)(1) (providing that a state court's determination of a factual issue is "presumed to be correct" and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence.").

In conclusion, because this Court must defer to the state court's factual findings, Petitioner's claim that trial counsel was ineffective during plea negotiations fails because Petitioner has not offered clear and convincing evidence to rebut the presumption of

correctness.  *See* 28 U.S.C. § 2254(e)(1); *Lambert v. Blodgett*, 393 F.3d 943, 977, 978 (9th Cir. 2004) (stating that presumption of correctness applies to "state court findings of fact made in the course of resolving claims of ineffective assistance of counsel."); *see also Miller v. Thaler*, 714 F.3d 897, 902 (5th Cir. 2013) (presuming correct the trial court's finding that a defense attorney relayed the prosecutor's rejection of a plea counteroffer to the petitioner because there was no clear and convincing evidence to the contrary).

Considering the state court's presumably correct findings regarding the plea negotiations that are discussed above, Petitioner has not shown that Billar's performance was deficient and, thus, cannot establish a claim of ineffective assistance of counel.  *See Strickland*, 466 U.S. at 687.  Accordingly, Petitioner has not established that the state court's determination that Billar was not ineffective is based on an unreasonable determination of the facts, or is contrary to, or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d).

**VI.     Conclusion**

As discussed above, other than her Fourth Amendment claim and her claims that trial counsel was ineffective during plea negotiations, Petitioner's claims are procedurally barred from federal habeas corpus review and she has not established a basis to overcome that bar.  Additionally, Petitioner's Fourth Amendment claim was fully litigated in state court and therefore is not subject to federal habeas corpus review.  Finally, Petitioner has not shown that the state court's decision rejecting her claim that trial counsel was ineffective during plea negotiations is based on an unreasonable determination of the facts, or is contrary to or an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d).  Accordingly, Petitioner is not entitled to habeas corpus relief.

Accordingly,

**IT IS ORDERED** that the Court's May 15, 2015 Order (Doc. 19) is withdrawn and the Respondents' Motion for Extension of Time (Doc. 21) is **DENIED** as moot.

1    **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus

2    pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED**.

3    **IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave

4    to proceed *in forma pauperis* on appeal be denied because dismissal of the Petition is

5    justified by a plain procedural bar and reasonable jurists would not find the ruling

6    debatable.

7    This recommendation is not an order that is immediately appealable to the Ninth

8    Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1)

9    should not be filed until entry of the District Court's judgment.  The parties shall have

10   fourteen days from the date of service of a copy of this recommendation within which to

11   file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ.

12   P. 6, 72.  Thereafter, the parties have fourteen days within which to file a response to the

13   objections.  Failure to file timely objections to the Magistrate Judge's Report and

14   Recommendation may result in the acceptance of the Report and Recommendation by the

15   District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114,

16   1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of

17   the Magistrate Judge may be considered a waiver of a party's right to appellate review of

18   the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's

19   recommendation.  *See* Fed. R. Civ. P. 72.

20   Dated this 13th day of August, 2015.

21

22

23                                    _____

24                                    Bridget S. Bade

25                                    United States Magistrate Judge

26

27

28